J. W. Stone and Myrtle Stone, Appellants, v. W. E. Hammons, Trustee, and W. L. Brandon.—146 S. W. (2d) 606.

Division One, January 4, 1941.

*John W. Noble* for appellants.

130

*Henson & Henson* for respondents.

PER CURIAM:—This is a suit to set aside a sale under foreclosure and to cancel the trustee's deed. Judgment below was for defendants and plaintiffs have appealed.

The plaintiffs, husband and wife, bought the land and gave back a purchase money deed of trust. The tract, known as Ringo Ford Tourist Camp, is in Butler County and contains approximately ten acres. It lies along the west bank of Little Black River and another boundary is a creek called Spring Branch. It is used as a fishing and swimming resort and has seven clubhouses on it. Plaintiffs operated it and conducted a store and filling station to serve visitors and those who occupy the cabins. After buying the land they leased a clubhouse site to defendant Brandon who erected a cabin which, with improvements, cost about $1,300. Brandon subsequently became the owner of the debt secured by the deed of trust and had it foreclosed by defendant Hammons, the sheriff, acting as substitute trustee. It was bought in for Brandon for $2,800.

Plaintiffs charge that the sale was unfair in that Brandon's business manager and an attorney representing Brandon together acting with the trustee discouraged and chilled free bidding at the sale by representing that Brandon's lease was prior to the deed of trust being foreclosed and the land was being sold subject to such lease so that Brandon could and did obtain the property for less than its value. The record shows without dispute the trustee at the sale first

read the notice of sale and then he read a notation from a slip of paper that there was a lease on a certain part of the property which had seventeen years to run and that the lease had been recorded. The trustee admitted that he had been directed by Brandon's attorney to read this announcement and had received from the attorney the paper from which he read. Plaintiffs' testimony shows that the trustee in response to a question announced also that the lease came ahead of the deed of trust and that the property would be sold subject to the lease. This is denied by defendants but there is testimony produced by defendants themselves as well as by plaintiffs which indicates that when the question as to the priority of the lease was asked of the trustee he permitted either Brandon's attorney or business manager to answer for him that the lease came first. The sale then proceeded and there was but one bid of $2,800 by Brandon's business manager. Hutchison, a prospective bidder, testified that he was prepared to bid $3,500 but did not make any bid because he felt he would be buying a lawsuit in view of the statements about the lease. Hutchison deposited the sum of $3,500 in the trial court to show his good faith.

The facts manifest to us a clear and positive plan by the defendants to protect Brandon's lease. The part played by the trustee was perhaps from innocent motives, but gave color to the picture and was effective. With such activating purpose, what better way to protect the lease could be found than by setting the stage to eliminate, if possible, any contest in bidding against Brandon who held the debt? The record demonstrates the success of the plan. There was testimony that the property was worth $4,000 and we have the actual tender of $3,500. Although the selling price was not grossly inadequate, yet it was in fact inadequate. And it was inadequate because of the unfairness which pervaded the sale. The announcement of the lease by the trustee served no impartial purpose. It immediately caused doubt whether the land would be sold free and clear. Under the circumstances of this case there could have been no reason for making such an announcement except to mislead and thereby to frighten prospective bidders. It did so. If the representation that the lease was ahead of the deed of trust, which is disputed, actually was made, it added to the deception. We have the glaring result that all but the interested bidder were silenced. The fact that Brandon claims he had taken over the debt as a favor to plaintiffs to prevent a threatened earlier foreclosure and was to receive another lease does not palliate or excuse the improper conduct of the sale.

It is conceded that the lease was made subsequent to the date of the deed of trust being foreclosed. Therefore, it cannot properly be contended that the sale was subject to the lease because it has long been the established rule a foreclosure of a deed of trust antedating a lease of the mortgaged premises nullifies and extinguishes the

lease. [McFarland Real Estate Co. v. Gerardi Hotel Co., 202 Mo. 597, 100 S. W. 577; Roosevelt Hotel Corp. v. Williams, 227 Mo. App. 1063, 56 S. W. (2d) 801.] This lends support to our finding that the purpose in having the trustee improperly declare that there was a recorded lease on the property was to chill the sale and to prevent free bidding. ''Chilling is killing,'' Judge LAMM has announced. [Hendricks v. Calloway, 211 Mo. 536, 111 S. W. 60.]

The question about representations made by a trustee at a foreclosure sale even though made inadvertently came up in Krug v. Bremer, 316 Mo. 891, 292 S. W. 702. After stating the trustee acts as the trusted agent for all parties and must protect all of them, we held where the trustee's conduct in conducting a foreclosure sale is unfair and causes injury to one of the parties even though such conduct was unintentional, the sale is tainted. Again in Vannoy v. Duvall Trust Co. (Mo.), 29 S. W. 692, we held that although a trustee in selling property may intend to be fair and may believe that he is being fair yet if his acts show that he was not fair, then the sale is voidable. And in West v. Axtell, 322 Mo. 401, 17 S. W. (2d) 328, we said that where there may be no substantial evidence of actual fraud on the part of the trustee yet if the sale was not entirely fair we have never hesitated to set it aside and to reinstate the deed of trust where it appears that injury has resulted to one of the parties.

We find also that collusion between the trustee and mortgagee, or managing the sale in a way to preclude free bidding, particularly when the purpose is to favor some would-be purchaser, is cause for setting the sale aside. [Borth v. Proctor (Mo.), 219 S. W. 72.] Likewise a sale may be set aside for the misconduct of the mortgagee. This court has said that where the mortgagee is the purchaser at the sale and there is any irregularity or anything said or done by the mortgagee, which was reasonably calculated to prevent free and unhampered bidding, the sale should be set aside. [Guels v. Mississippi Valley Trust Co., 329 Mo. 1154, 49 S. W. (2d) 60. See Jones on Mortgages (8 Ed.), sec. 2137.]

Our decisions follow the general rule which has been thus expressed: any ''statements or representations as to the property or state of the title, or other circumstances which have a tendency to chill bidders or mislead or confuse them, or to discourage competition or depress the price of the property, resulting in its sale for less than it would have brought at an auction, fairly conducted, will be cause for setting aside the sale.'' [42 C. J., Mortgages, sec. 1875.]

The cases relied on by defendants are not applicable to the situation here. The facts shown by them are not similar. No charges were made of unfairness in conducting the sales or that bidding was deterred.

The truth of the fact that Brandon did have a lease which was of record is no defense to this action. A true representation may not be

used to create an impression substantially false for the purpose of deception. The gravamen of this case is the conduct of the defendants which made the sale unfair. We can readily perceive a situation where the announcement of a lease on the premises to be sold would be appropriate and properly made at a foreclosure sale and might be used to increase, rather than decrease, the bidding. We are deciding in this case only that the conduct of the defendants under the circumstances and results here involved made this sale unfair.

In view of this conclusion the sale may not be allowed to stand. The judgment is reversed and the cause remanded with directions to set aside the foreclosure sale and to cancel the trustee's deed to defendant Brandon. All concur.